**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ASHLEY POPE, as Personal Representative
of the Estate of JUSTIN POPE,

     Plaintiff,

                                    Case No. 10-13285

v.                                    Hon. Lawrence P. Zatkoff

KYLE PALMER and DYNCORP
INTERNATIONAL INC.

     Defendants,

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 28, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Extend the Scheduling Order [dkt

27]; Defendant DynCorp International Inc.'s Motion for Summary judgment [dkt 29], and Defendant

Kyle Palmer's Motion for Summary Judgment [dkt 31].  Defendants have not filed a reply to

Plaintiff's Motion, but both Motions for Summary Judgment have been fully briefed by the parties.

The Court finds that the facts and legal arguments are adequately presented in the parties' papers

such that the decision process would not be significantly aided by oral argument.  Therefore,

pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the motions be resolved on the

briefs submitted, without oral argument.  For the following reasons, Plaintiff's Motion to Extend the

Scheduling Order is DENIED and Defendants' Motions for Summary Judgment are GRANTED.

## II.  BACKGROUND

This is a negligence action arising out of the shooting death of Plaintiff's husband, Justin Pope ("Pope") by his co-worker Defendant Kyle Palmer ("Palmer") while stationed in Kurkuit, Iraq at their employers' facility, Defendant DynCorp International, Inc. ("DynCorp").[1]  DynCorp is a Virginia corporation and Palmer is a citizen of Mississippi.  Plaintiff Ashley Pope ("Plaintiff"), wife of Pope and personal representative of the estate of Pope, filed this action.  Plaintiff and Pope are citizens of Michigan.

### A. FACTUAL BACKGROUND

Pope served in the United States military as a Marine, until his honorable discharge in 2006. In mid 2007, Pope was hired by DynCorp as a "diplomatic security guard" and was assigned to Iraq. Pope completed a one year assignment with DynCorp, before agreeing to a second one-year assignment, beginning in the fall of 2008.  Pope's employment with DynCorp was pursuant to a written contract entitled "Foreign Service Employment Agreement" ("Employment Agreement").[2] The Employment Agreement also contains a liability waiver provision, stating in relevant part:

>     10. Liability

---

[1]According to the parties' briefs, Defendant DynCorp International, Inc. is a holding company.  Pope's actual employer was DynCorp International, LLC, which is a part of the holding company of Defendant DynCorp International, Inc.  DynCorp International, LLC is not a named party in this action.  The Court will refer to both entities as "DynCorp" unless the Court specifically notes otherwise.

[2] The initial Employment Agreement was executed on October 30, 2001, which was renewed on November 7 and 8, 2007, and September 13 and 22, 2008.  The renewals of the Employment Agreement contained modifications to Pope's position and salary.  It is not clear to the Court why the initial Employment Agreement was executed in 2001 since Pope was in the military until December of 2006.  The parties neither provide any explanation nor dispute the validity of the initial Employment Agreement or the subsequent renewals.

2

This is to advise you of certain facts that you should be aware of concerning your impending assignment to support the Employer on its contract with its Customer. Given what is expected to be a very fluid environment in the Host Country, it is difficult to predict with any degree of precision what conditions you may experience. However, due to the circumstances that are likely to exist in the Host Country, you should be aware that it is possible that your assignment or possible business travel to the Host Country might entail some degree of personal hardship and danger. Therefore, there are certain factors that you should take into account before you decide to accept an assignment to this Project.

* * *

The Employee understands and accepts the fact that he or she will be exposed to dangers due to the nature of the mission. *The Employee agrees that neither Employer nor its affiliates will be liable in the event of death, injury, or disability to Employee. Employer will obtain the insurance described in Attachment A on behalf of the Employee and the Employee agrees to accept these insurance benefits as full satisfaction of any claim for death, injury, or disability the Employee or the Employee's representatives and heirs may have against Employer and its affiliates.*

The Employee waives any cause of action the Employee may have against the Employer, and any medical personal employed by the Employer or its subcontractors in connection with medical services provided to the Employee.

Def. Palmer's Reply Br. Ex. J at 3–4 (emphasis added).  According to DynCorp, Pope's employment with DynCorp was in connection with a contract (the "Defense Contract") between it and the United States State Department ("State Department") to provide "diplomatic security services" for the State Department in Kurkuit, Iraq.

On March 5, 2009, after completing his shift for the day, Pope, at twenty-five years old,  was in his room on the premises owned by DynCorp.  While Pope was in his room, several DynCorp employees, including Palmer, were allegedly drinking alcohol on DynCorp's property.  According to Plaintiff, Palmer and other DynCorp employees were intoxicated when they entered Pope's room.

3

Palmer pulled out a gun, pulled the trigger and shot Pope. Plaintiff stated in her deposition that after filing this action she spoke with Palmer. It was her understanding that Palmer was intoxicated when he accidentally shot Pope. Pope died shortly after. Palmer was prosecuted by the United States in the United States District Court for the Southern District of Mississippi. Palmer pled guilty to a single count of involuntary manslaughter under 18 U.S.C. § 1112. He was sentenced to three years in a federal person, which is he is currently serving.

On or about January 6, 2010, Plaintiff filed a claim for death benefits with the United States Department of Labor under the Longshore and Harbor Workers' Compensation Act (the "Longshore Act"), 33 U.S.C. § 901 *et seq*., and the Defense Base Act (the "DBA"), 42 U.S.C. § 1651 *et seq.* Plaintiff's claim was approved. Once approved, she received a lump sum payment and continues to receive bi-weekly death benefit payments under the DBA.

**B. PROCEDURAL BACKGROUND**

Plaintiff originally filed this action in a Oakland County circuit court in Michigan on July 19, 2010. On August 19, 2010, this action was removed to this Court on the basis of diversity jurisdiction. Plaintiff's Complaint asserts a single count against Defendants for negligence. Specifically, Plaintiff asserts :

> Palmer and DynCorp . . . were negligent when Palmer shot [Pope] and breached [their] duties in a number of ways, including, but not limited to:
>
> a. Failure to ensure that the gun was properly unloaded and stored away from individuals.
>
> b. Improperly allowing DynCorp individuals to consume alcohol and be under the influence of alcohol on DynCorp property.
>
> c. Improperly allowing DynCorp to pull their loaded weapons on DynCorp property.

4

            d. Any and all additional acts of negligence, which may become
            known through the course of discovery.

Pl.'s Compl. 3–4.

On December 27, 2010, Plaintiff served on DynCorp a Request for Production of Documents.[3] Plaintiff also purportedly served subpoenas on the State Department, United States Department of Justice ("Department of Justice") and the Department of Justice Investigator.[4] On December 28, 2010, the Court entered a Scheduling Order with a discovery cut-off date of June 28, 2011, and a dispositive motion cut-off date of July 21, 2011. On April 14, 2011, Plaintiff's counsel mailed a letter to Defendants' counsel indicating that Defendants have not yet answered Plaintiff's discovery. Plaintiff's counsel contacted Defendants' counsel by letter, dated July 12, 2011, regarding Plaintiff's Notice of Taking Video Deposition Duces Tecum of Palmer. Plaintiffs' set the deposition of Palmer on July 29, 2011, at the FCI Bastrop Federal Correctional Institution, 1341 Highway 95 North, Bastrop, Texas 78602. A second letter to Defendants' counsel, also dated July 12, 2011, included Notices of Depositions Duces Tecum for four DynCorp employees. The Notices for the DynCorp employees set the depositions for July 25, 2011. These depositions of Palmer and other DynCorp employees, however, never occurred as set by Plaintiff.

During the discovery period, Plaintiff's counsel left his firm on May 13, 2011. Although Plaintiff's counsel remains the same, counsel did not receive the file from his prior firm until June

---

    [3] Plaintiff requested a complete copy of Pope's personnel file, any training manuals in effect from January 1, 2007, to March 5, 2009, any relevant policies and procedures in effect on the premises of DynCorp, any investigation documents pertaining to an investigation conducted by DynCorp regarding Pope's death, and a list of DynCorp employees present on March 5, 2009, at Pope's location.

    [4] Plaintiff requested any documents in the Department of Justice's possession relating to the investigation of Pope's death.

5

30, 2011.  On June 28, 2011, Plaintiff's counsel filed a Motion to Compel Discovery from Defendants and a Motion to Extend the Scheduling Order.  On July 1, 2011, DynCorp filed its instant Motion for Summary Judgment.  Following the filing of DynCorp's Motion for Summary Judgment, Palmer filed his Motion for Summary Judgment.

### III.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.  *Celotex*, 477 U.S. at 323.  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's

6

case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving

party, who "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere

existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient

[to defeat a motion for summary judgment]; there must be evidence on which the jury could

reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986).

## IV.  ANALYSIS

Defendants' Motions for Summary Judgment are essentially identical with respect to their

substantive arguments.  They seek dismissal of Plaintiff's action for two reasons.  First, Defendants

argue that the DBA and Longshore Act bar Plaintiff's wrongful death suit against Dyncorp and

Palmer.  Second, Defendants alternatively argue that the Employment Agreement contains a liability

waiver provision barring Plaintiff from bringing any claim against DynCorp and Palmer for the

death of Pope.  In response to Defendants' Motions for Summary Judgment, Plaintiff requests the

Court to deny Defendants' Motions and grant Plaintiff additional time for discover pursuant to Fed.

R. Civ. P. 56(d).

### A.  THE DEFENSE BASE ACT

The DBA was enacted in 1941 and incorporates the provisions of the Longshore Act.  *See*

42 U.S.C. § 1651(a).  Thus, unless stated otherwise in the DBA, the provisions of the Longshore Act

apply with equal force.  The DBA provides, in relevant part:

> (a) . . . Except as herein modified, the provisions of [the Longshore
> Act] . . . shall apply in respect to the injury or death of any employee

7

engaged in any employment.

*Id.* at § 1651(a). The DBA creates a federal compensation scheme for defense contractors and

employees when such an employee suffers injury or death while working outside of the United

States. *See, e.g., AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1112 (5th Cir. 1991); *see also,*

*Royal Indem. Co. v. Puerto Rico Cement Corp.*, 142 F.2d 237, 239 (1st Cir. 1944). The DBA

provides coverage for such injury or death in two relevant instances:

> (4) under a contract entered into with the United States or any
> executive department, independent establishment, or agency thereof
> . . . where such contract is to be performed outside the continental
> United States . . . for the purposes of engaging in public work . . . ;
> [or]
>
> (5) under a contract approved and financed by the United States or
> any executive department, independent establishment, or agency
> thereof … where such contract is to be performed outside the
> continental United States, under the Mutual Security Act of 1954, as
> amended.

42 U.S.C. §§ 1651(a)(4)–(5).[5] The employer must also obtain DBA insurance for its employees and

maintain such insurance during the course of the contract. *See id.* at § 1651(a)(5).

   If the work being performed outside of the United States is covered by the DBA and the

employer has met the procedural requirements of providing DBA insurance for its employees, the

employer's liability is limited as that set forth under the DBA and therefore replaces certain state

law damages claims. *See Carr v. Lockheed Martin*, No. Civ. SA-97-CA-1408-OG, 1999 WL

33290613, at *2 (W.D. Tex. Feb. 8, 1999) ("It is undisputed that the [DBA] provides [the plaintiff]

his sole remedy if his injury . . .  was suffered by [the plaintiff] in the course and scope of his

---

   [5] The DBA defines "public work" as "projects or operations under service contracts and
projects in connection with the national defense or with war activities." 42 U.S.C. § 1651(b)(1).

employment."); *see* 42 U.S.C. § 1651(c) (stating that the compensation scheme under the DBA is "exclusive and in place of all other liability of such employer . . . under the workmen's compensation law of any State.").

In determining the application of the DBA to the instant action, the DBA fails to define "injury or death of any employee engaged in employment" as used in 42 U.S.C. § 1651(a). However, having incorporated the provisions of the Longshore Act, the Longshore Act defines "injury" as:

> *accidental injury or death arising out of and in the course of employment*, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

33 U.S.C. § 902(2) (emphasis added).

## B.   ADDITIONAL TIME TO CONDUCT DISCOVERY PURSUANT TO FED. R. CIV. P. 56(D)

Before addressing the merits of Defendants' Motions, Plaintiff requests additional time to conduct discovery pursuant to Fed. R. Civ. P. 56(d) and has filed the appropriate Affidavit stating the information Plaintiff intends to discover to defend against Defendants' Motions.  Plaintiff argues that Defendants' failure to respond to Plaintiff's discovery requests and the State Department and Department of Justice's failure to provide the information in its possession warrants denying Defendants' Motions.  According to Plaintiff, without this information she is unable to defend against Defendants' arguments that the DBA is Plaintiff's exclusive remedy and bars her state tort negligence claim.  Plaintiff argues that the DBA exempts employers and contractors, but does not exempt the corporate parent of a company such as DynCorp.  Plaintiff concludes that without its requested discovery from Defendants it is unable to show at this time that DynCorp is not excluded

9

2:10-cv-13285-LPZ-RSW   Doc # 37   Filed 09/28/11   Pg 10 of 18   Pg ID 611

by the DBA.  Plaintiff also argues that Pope's death is not the result of an accident being related to his work in Iraq.  Rather, Plaintiff asserts that Pope was intentionally shot by Palmer, and thus, the DBA does not apply.  Plaintiff contends that she also must be permitted to take the depositions of the forensic pathologist who performed the autopsy in this case and Plaintiff's expert, Dr. Werner Spitz to support her assertion that Pope was intentionally shot.

Fed. R. Civ. P. 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

A continuance cannot be granted unless the motion is accompanied by an affidavit indicating the party's "need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

The Court rejects Plaintiff's arguments and denies Plaintiff's request for additional discovery under Fed. R. Civ. P. 56(d) for the reasons that follow.  First, Plaintiff just now attempts to avoid summary judgment on her negligence claim by arguing that Pope's death was not accidental, but rather intentional.  Yet, in her claim for benefits under the DBA, her Complaint, and prior pleadings, she asserts Palmer accidentally shot Pope during an altercation in which Palmer was intoxicated.  Thus, discovering additional facts on whether Pope's death was the result of intentional acts is irrelevant as the Court is presented with Plaintiff's Complaint that alleges a single-count of negligence against Defendants.  Plaintiff asserts no claims based on the intentional acts of

10

Defendants in her Complaint.[6]  The Court therefore does not find that allowing Plaintiff to depose

Palmer, DynCorp employees, and the forensic pathologist will provide any additional facts to contest

Defendants' argument that the DBA precludes Plaintiff's single negligence claim.  *See CenTra, Inc.*

*v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (noting that denial of a Rule 56(d) motion may be

appropriate when "further discovery would not have changed the legal and factual deficiencies")

(citation omitted).

Second, Plaintiff has not shown a diligent effort to conduct discovery.  Plaintiff first

requested discovery from DynCorp on December 27, 2010.  Plaintiff fails to show sufficient cause

why she delayed filing her Motion to Compel DynCorp's responses until June 28,

2011—approximately six months later and on the discovery cut-off date.  To the extent that Plaintiff

sought discovery from Palmer, according to the evidence attached to Palmer's reply brief, Plaintiff

sought no discovery from Palmer until June 13, 2011.  In a letter dated June 13, 2011, (fifteen days

before the discovery cut-off date) Plaintiff's counsel asked Defendants' counsel to contact his

assistant to arrange a teleconference call regarding discovery.  According to the Affidavit of

Palmer's counsel, Plaintiff's counsel made no further follow-ups regarding this teleconference call.

Third, Plaintiff provides insufficient reasons for why she waited until July 12, 2011, to notice

the depositions of Palmer and other DynCorp employees.  Although Plaintiff's counsel did not have

_____

[6] Plaintiff makes the passing statement that she will be amending her Complaint to add
DynCorp International, LLC as a party defendant to this action.  Plaintiff explains that she did not
first become aware of DynCorp, International LLC's involvement in this action until the filing of
the present motion because DynCorp International, Inc. never produced any documents to Plaintiff.
The Court finds that Plaintiff's assertion lacks any merit.  Although Plaintiff made a request to
DynCorp International, Inc. for production of documents on December 27, 2010, Plaintiff never filed
her Motion to Compel such production until June 28, 2011.  As discussed in this Section, Plaintiff
provides insufficient cause for such delay.

his prior firm's case file for this action for a period of time, Plaintiff's counsel did not leave his law

firm until May 13, 2011—approximately four and a half months after the Court's Scheduling Order

and more than ten months after Plaintiff filed her case in state court.  Moreover, even though

Plaintiff asserts she is awaiting document production from the State Department and Department of

Justice, in Plaintiff's counsel's correspondence with an individual at the Department of Justice

(dated July 15, 2011), Plaintiff's counsel noted that he was "in the process of preparing subpoenas

for the depositions" of Department of Justice employees.  Plaintiff provides no reasons why such

subpoenas were not prepared months in advance and prior to the discovery cut-off date of June 28,

2011.  Further indicating Plaintiff's delay in discovery, Plaintiff filed her Motion to Extend the

Scheduling Order on the day that the Court set discovery to close—June 28, 2011.

        For the reasons stated above, Plaintiff is not entitled to additional discovery with respect to

whether Pope's death was accidental.  Plaintiff has also failed to show good cause to modify the

Court's Scheduling Order pursuant to Fed. R. Civ. P. 16(b)(4).  Accordingly, the Court denies

Plaintiff's request for additional discovery pursuant to Fed. R. Civ. P. 56(d) and Plaintiff's Motion

to Extend the Scheduling Order Dates.

## C.  APPLICATION OF THE DBA TO PLAINTIFF'S NEGLIGENCE CLAIM

        As the Court discussed in Section A, *supra*, Plaintiff's claim of negligence falls within the

scope of the Longshore Act and the DBA if Pope's death was the cause of an accidental death

arising out of and in the course of his employment.  *See* 42 U.S.C. §§ 1651(a), (c); 33 U.S.C. §

902(2); *Ross v. Dyncorp*, 362 F. Supp. 2d 344, 352 (D. D.C. 2005) (holding that the DBA and

Longshore Act "necessarily displaces all derivative common-law causes of action based on the

injury or death of a covered employee caused by employer negligence, including wrongful death and

12

survivorship actions").

In discussing the meaning of "accidental injury or death" within the context of the DBA, a district court in Texas, in a recently decided case, set out to define "accident" as the word is used to modify "injury or death." *Fisher v. Halliburton*, 703 F. Supp. 2d 639, 646 (S.D. Tex. 2010). After reviewing several dictionaries in use at the time that Congress enacted the Longshore Act, the court parsed the meaning of "accident" to require an (1) unexpected and (2) undesired event. *Id.* 646–47. After further expounding on the meaning of "undesired," the court held that an injury or death is not an "accident" under the Longshore Act, and thus the DBA, "if a reasonable person would have had some grounds or reasons for believing that the event was likely to occur." *Id.* at 647.

In determining whether an injury occurred in "the course of employment," the United States Supreme Court noted:

> The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the obligations or conditions of employment create the zone of special danger out of which the injury arose.

*O'Leary v. Brown-Pacific Maxon*, 340 U.S. 504, 506 (1951) (internal citations omitted).

In this case, Defendants contend that no genuine dispute of fact exists that the DBA applies to Pope's death and thus Plaintiff's state law negligence action must be dismissed. Plaintiff asserts that a genuine dispute exists as to the application of the DBA to this action. Plaintiff argues that the DBA exempts employers and contractors, but notes nothing about the corporate parent of a company such as DynCorp. Plaintiff also argues that Pope's death is not the result of an accidental death related to his work in Iraq. Plaintiff therefore concludes that because Pope was intentionally shot

13

by Palmer the DBA does not apply.

Upon reviewing the parties' arguments and all of the evidence in the record, the Court concludes that Plaintiff fails to create any genuine dispute concerning the applicability of the Defense Base Act to Plaintiff's negligence-based claims. The Court first notes that the parties do not dispute that DynCorp assigned Pope to work outside of the United States in Iraq, that DynCorp obtained DBA insurance coverage and conformed with the applicable provision of the DBA, and that Plaintiff has been, and continues to be, compensated under the DBA. See *Colon v. United States Dep't of Navy*, 223 F. Supp. 2d 368, 370 (D. P.R. 2002) ("The courts that have reviewed this issue have uniformly held that an employer that secures insurance coverage for its employees as required by the DBA is entitled to immunity under the [Longshore Act].").

Second, Plaintiff appears to dispute that DynCorp International, Inc., the named Defendant in this action is actually Plaintiff's employer. Rather, Plaintiff suggests that DynCorp International, LLC is Plaintiff's employer because the Defense Contract was entered into between the State Department and DynCorp International, LLC, not DynCorp International, Inc. The Court finds no merit in Plaintiff's assertion. In *Ross v. DynCorp*, the plaintiffs sued DynCorp International, Inc., DynCorp Technical Services, LLC, and DynCorp International, LLC as named defendants. 362 F. Supp. 2d at 344. In addressing the plaintiffs' claims against the named defendants, the court noted that the contract was actually entered into between the State Department and another non-party, DynCorp AeroSpace Technology. *Id.* at 347 n.1. Notwithstanding this, the court evaluated the plaintiffs' claims against the named defendants because DynCorp AeroSpace Technology was a divisional unit of DynCorp and not a separate entity. *Id.* In dismissing the plaintiffs' negligence claims against the defendants, the court did not distinguish between the three named DynCorp

14

entities.  *See id.* at 352    The Court finds no reason to do so here.  Even though DynCorp

International, LLC entered into the Defense Contract, the Court finds the applicability of the DBA

to DynCorp International, Inc. is the same as DynCorp International, LLC to the extent that they are

considered Pope's employer within the meaning of the DBA.  As such, Defendants are covered by

the DBA and the Longshore Act.[7]

        Third, to the extent that Plaintiff disputes that Pope's death is an "accidental death occurring

in the course of employment," the Court finds that there is no genuine dispute that Pope's death was

"accidental" while he was in the "course of his employment."  With respect to whether his death was

"accidental," Plaintiff's Complaint, pleadings, and deposition testimony show that Pope's death was

"accidental" and therefore an "undesirable" and "unforeseeable" event due to the interaction

between Pope and Palmer while Palmer was intoxicated.  Based on the record, a reasonable jury

would have no basis to find that the event was likely to occur.  Therefore, the Court finds that Pope's

death was "accidental" within the meaning of the DBA.

        With respect to whether his death occurred in the course of employment, Pope was in Iraq

at DynCorp's premises based on the "obligations" and "conditions" of his Employment Agreement.

*See O'Leary*, 340 U.S. at 507.  Pope had just returned from his shift for the day and was positioned

in his room provided by DynCorp on DynCorp's premises.  He was placed in a "zone of special

danger" in which an accidental shooting by Palmer occurred  based on such "obligations" and

"conditions" of Pope's employment with DynCorp.  *See id.*  Whether Pope and other DynCorp

---

        [7] Palmer is entitled to the same limitation on liability under the DBA and the Longshore Act
as DynCorp.  *See* 33 U.S.C. § 933(i) ("The right to compensation or benefits under this chapter shall
be the exclusive remedy to . . . his eligible survivors or legal representatives if he is killed, by the
negligence or wrong of any other person or persons in the same employ.").

15

employees were participating in recreational activities is irrelevant as it is not necessary that Pope

be engaged in an activity for the benefit of DynCorp at the time of his killing.  *See id.*  Therefore,

Pope's death occurred within the "course of his employment."  Accordingly, Pope's death is one

which is covered by the DBA.

Fourth, Plaintiff, after filing this suit, filed a claim for benefits under the DBA.  Her claim

was reviewed and approved.  Plaintiff received a lump sum payment and continues to receive

bi-weekly payments since her claim under the DBA was approved.  The Court finds that this also

demonstrates the applicability of the Longshore Act and the DBA as Plaintiff's exclusive remedy

for Pope's death.  *See Colon*, 223 F. Supp. 2d at 370 (noting that the plaintiff's compensation of an

insurance policy pursuant to the DBA was one of four facts to show that the Longshore Act was the

plaintiff's exclusive remedy).

Therefore, the Court finds that the DBA and Longshore Act are Plaintiff's exclusive remedy

and, as a matter of law, Plaintiff may not maintain a state-law negligence claim against Defendants.

*See Robin v. Sun Oil Co.*, 548 F.2d 554, 556–57 (5th Cir. 1977) (holding that a wrongful death claim

of a widow of a covered employee was displaced by the exclusive remedy provisions of the

Longshore Act).  As such, Defendants' Motions for Summary Judgment are granted with respect

to dismissing Plaintiff's Complaint.[8]  Defendants, in requesting dismissal of Plaintiff's Complaint,

also seek that all costs of this action be assessed against Plaintiff.  Defendants, however, provide no

legal authority to support their request and the Court finds no reason to require the costs of this

action to be assessed against Plaintiff.  As such, to the extent Defendants' Motions for Summary

---

[8]  Having determined that the DBA is Plaintiff's exclusive remedy, the Court need not
address Defendants' alternative argument that the liability waiver provision in the Employment
Agreement signed by Pope bars Plaintiff's claim against Defendants.

Judgment seek all costs of this action to be assessed against Plaintiff, Defendants' Motions for Summary Judgment are denied.

## V.  CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Plaintiff's Motion to Extend the Scheduling Order [dkt 27] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's requests to deny Defendants' Motion for Summary Judgment so that Plaintiff may conduct further discovery pursuant to Fed. R. Civ. P. 56(d) is DENIED.

IT IS FURTHER ORDERED that Defendant DynCorp International Inc.'s Motion for Summary Judgment [dkt 29] and Defendant Kyle Palmer's Motion for Summary Judgment [dkt 31] are GRANTED.

IT IS FURTHER ORDERED that because Plaintiff's sole claim for negligence is dismissed, all claims in this case have been resolved.

IT IS SO ORDERED.

17

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 28, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

18